1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10          SOUTHERN DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| 12  J. ELIZABETH SANTOS and GLORIA P. SANTOS, Trustee of the GHS Living Trust, | Case No.: 3:24-cv-02069-GPC-MSB |
| 13 | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| 14                      Plaintiffs, | |
| 15  v. | |
| 16  FIDELITY NATIONAL TITLE INSURANCE COMPANY, as successor to American Title Insurance Company, | |
| 17 | |
| 18                      Defendant. | **[Dkt. Nos. 30, 38]** |
| 19 | |

20
21          Before the Court is Defendant's motion for judgment on the pleadings pursuant to
22  Federal Rule of Civil Procedure 12(c).  (Dkt. No. 30.)  Plaintiffs filed an opposition on
23  June 27, 2025.  (Dkt. No. 39.)  Defendant filed a reply on July 11, 2025.  (Dkt. No. 43.)
24  On June 27, 2025, Plaintiffs filed a motion for partial summary judgment.  (Dkt. No. 38.)
25  Defendant filed an opposition on July 18, 2025, and Plaintiffs replied on August 1, 2025.
26  (Dkt. Nos. 44, 46.)  A hearing was held on September 26, 2025.  (Dkt. No. 53.)  For the
27  reasons below, the Court GRANTS in part and DENIES in part Defendant's motion for
28  judgment on the pleadings and DENIES Plaintiffs' motion for partial summary judgment.

# BACKGROUND

Plaintiffs J. Elizabeth Santos, a single woman, and Gloria P. Santos, Trustee of the GHS Living Trust, ("Plaintiffs"), filed the operative second amended complaint against Defendant Fidelity National Title Insurance Company ("Fidelity" or "Defendant") alleging declaratory judgment pursuant to 28 U.S.C. § 2201, breach of contract and bad faith. (Dkt. No. 29, SAC ¶¶ 56-92.)  In the alternative, Plaintiffs seek contract reformation of the subject title insurance policy.  (*Id.* ¶¶ 93-99.)

## A.    Initial Purchase of the Property and the Title Insurance Policy

Gloria P. Santos, ("Gloria"), and her then husband Jose P. Santos, ("Mr. Santos"), purchased the property located at 140 East Barham Drive, San Marcos, CA 92078, (the "Property").  (*Id.* ¶¶ 2, 25.)  On December 15, 1980, they also purchased a title insurance policy (Policy Number S-7944819), ("the Policy"), from Defendant's predecessor, American Title Insurance Company, with an effective date of February 6, 1981 to cover the risk of any issues or defects with the title of the Property.  (*Id.*)

The Policy provides that the insurer "at its own cost and without undue delay, shall provide for the defense of an insured in litigation to the extent that such litigation involves an alleged defect, lien, encumbrance or other matter insured against by this policy." (*Id.* ¶¶ 4, 21; *see* Dkt. No. 29-1, Ex. A, Policy[1] at 4.[2])  The Policy defines "insured" as "the insured named in Schedule A, and, subject to any rights or defenses the Company may have had against the named insured, those who succeed to the interest of such insured by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin, or corporate or fiduciary successors." (Dkt. No. 29, SAC ¶ 23; Dkt. No. 29-1, Ex. A, Policy at 4.)  Schedule A of the Policy names Jose P. Santos and Gloria P. Santos, as insureds

---

[1] On a motion to dismiss, the Court may consider documents attached to the complaint by incorporation by reference.  *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.* 896 F.2d 1542, 1555, n.19 (9 Cir. 1989).

[2] Page numbers are based on the CM/ECF pagination.

and covers both fee for the core property at issue and an easement.  (Dkt. No. 29, SAC ¶ 19; Dkt. No. 29-1, Ex. A, Policy at 5.)  The estate or interest is vested in "Jose P. Santos and Gloria P. Santos, husband and wife as joint tenants[.]"  (*Id.*)

The Policy also states that its coverage "shall continue in force as of Date of Policy, in favor of an insured so long as such insured retains an estate or interest in the land, or owns an indebtedness secured by a purchase money mortgage given by a purchaser from such insured, or so long as such insured shall have liability by reason of covenants of warranty made by such insured in any transfer or conveyance of such estate or interest; provided, however; this policy shall not continue in force in favor of any purchase from such insured of either said estate or interest or indebtedness secured by a purchase money mortgage given to such insured[]", ("Continuation of Coverage Clause").  (Dkt. No. 29, SAC ¶ 24; Dkt. No. 29-1, Ex. A, Policy at 4.)

**B.    Subsequent Property Conveyances and the GHS Living Trust**

Due to their divorce, on January 11, 1993, Mr. Santos granted his interest in the Property to Gloria via an interspousal deed with no purchase involved.  (Dkt. No. 29, SAC ¶¶ 28, 29; Dkt. No. 30-4, D's RJN, Ex. 3 at 1.)  On February 22, 2000, Gloria created the GHS Living Trust (the "Trust"), a revocable, intervivos trust, and named herself as its Trustor and Trustee.  (Dkt. No. 29, SAC ¶ 5; Dkt. No. 29-1, Ex. F at 49-50.)  On the same day, Gloria, in her individual capacity, granted her interest in the Property to herself as Trustee via quitclaim deed with no purchase involved.  (Dkt. No. 29, SAC ¶ 30; Dkt. No. 30-5, D's RJN, Ex. 4 at 1-3.)

On June 9, 2014, Gloria, as Trustee, granted her interest in the Property to herself in her individual capacity, and to her daughter J. Elizabeth Santos ("Elizabeth"), in her individual capacity, as joint tenants via quitclaim deed with no purchase involved.  (Dkt. No, 29, SAC ¶ 30; Dkt. No. 30-6, D's RJN, Ex. 5 at 1–2.)  Also, on June 9, 2014, Gloria and Elizabeth, in their individual capacities, signed a deed of trust as borrowers with HomeBridge Financial Services serving as lender for purposes of refinancing the Property.  (Dkt. No. 30-7, D's RJN, Ex. 6 at 1-15.)  On June 9, 2014, Gloria and

Elizabeth, in their individual capacities, then granted their interest in the Property to Gloria, as Trustee under the GHS Living Trust, and Elizabeth, in her individual capacity, as joint tenants via quitclaim deed with no purchase involved.  (Dkt. No. 30-8, D's RJN, Ex. 7 at 1–2.)

## C.    The Quiet Title Lawsuit and Defendant's Denial of Coverage

On February 24, 2023, Elizabeth, in her individual capacity, and Gloria, as Trustee, were named as defendants in a quiet title lawsuit, (the "Quiet Title Lawsuit").  (Dkt. No. 29, SAC ¶ 33; Dkt. No. 30-9, D's RJN, Ex. 8 at 17.)  This lawsuit alleges that the easement at issue does not benefit the Property and seeks to extinguish the easement and remove Elizabeth and Gloria's interest in the easement.  (Dkt. No. 29, SAC ¶¶ 34–37.) Elizabeth and Gloria's defense costs in the Quiet Title Lawsuit exceed $150,000 and are expected to increase.  (*Id.* ¶ 38.)

Elizabeth and Gloria notified Defendant in writing about the Quiet Title Lawsuit, and on February 2, 2024, Defendant replied with the Initial Denial Letter.  (*Id.* ¶¶ 39–40; Dkt. No. 29-1, Ex. C at 33-36.)  Defendant denied coverage by asserting that the conveyances of the Property terminated coverage under the Policy.  (Dkt. No. 29, SAC ¶ 40.)  In the alternative, Defendant asserted that coverage did not apply due to a Policy exception that excludes claims that are not shown by public records but could be ascertained by inspecting the land or that may be asserted by persons possessing the land. (*Id.*)

On March 1, 2024, Elizabeth and Gloria replied to the Initial Denial Letter with a Request for Reconsideration Letter.  (Dkt. No. 29, SAC ¶ 41; Dkt. No. 29-1, Ex. D at 38–42.)  In this letter, Elizabeth and Gloria asserted that Defendant has a broad duty to defend under the Policy and that coverage under the Policy remains in place due to the definition of "insured" in the Policy.  (Dkt. No. 29, SAC ¶ 41.)  They also asserted that the claims in the Quiet Title Lawsuit did not fall under the Policy exceptions that Defendant noted in its Initial Denial Letter.  (*Id.*)

On April 4, 2024, Defendant replied to the Request for Reconsideration Letter with

the Reconsideration Denial Letter.  (Dkt. No. 29, SAC ¶ 42; Dkt. No. 29-1, Ex. E at 44–47.)  Defendant affirmed its initial denial and reasserted that the February 2000 conveyance of title to the Property terminated coverage under the Policy and that the Quiet Title Lawsuit's claims are excluded by the Policy's exceptions.  (*Id.*)

**D.    Instant Complaint**

On November 4, 2024, Plaintiffs filed their initial complaint against Defendant in this Court.  (Dkt. No. 1.)  On November 8, 2024, the Court issued an order requiring Plaintiffs to show cause why the case should not be dismissed for lack of subject matter jurisdiction.  (Dkt. No. 4.)  On November 22, 2024, Plaintiffs filed their first amended complaint.  (Dkt. No. 7.)  On May 9, 2025, the Court then granted Plaintiffs' motion for leave to file a second amended complaint to correct a factual error on how they have held title to the property.  (Dkt. No. 28 )  On May 12, 2025, Plaintiffs filed their second amended complaint seeking declaratory judgment that the "Policy obligates Fidelity to defend Insureds in the Quiet Title Lawsuit, that the transfers did not terminate coverage under the Policy, that J. Elizabeth Santos has rights as an insured under the Policy, and that neither Exception 2 nor any other exclusions apply" and seek a further declaration that "the Policy obligates Fidelity to pay Insureds any future losses that they incur as a result of the Quiet Title Lawsuit determined by reason of "[t]itle to the estate or interest described in Scheduled A being vested other than as therein," "[a]ny defect in lien or encumbrance on such title," or "[u]nremarketability of such title" pursuant to 28 U.S.C. § 2201.  (Dkt. No. 29, SAC ¶¶ 67-68.)  Plaintiffs also allege breach of contract and bad faith.  (*Id.* ¶¶ 69-92.)  In the alternative, Plaintiffs seek contract reformation of the subject title insurance policy.  (*Id*. ¶¶ 93-99.)

Defendant moves for judgment on the pleadings and Plaintiffs move for partial summary judgment and both motions are fully briefed.  (Dkt. Nos. 30, 38, 39, 43, 44, 46.)

**DISCUSSION**

**A.    Legal Standard on Motion for Judgment on the Pleadings**

A party may move for judgment on the pleadings "[a]fter the pleadings are

closed—but early enough not to delay trial[.]"  Fed. R. Civ. P. 12(c).

The standard for determining a Rule 12(c) motion "functionally identical" to a Rule 12(b)(6) motion to dismiss.  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  "Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true and construed in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law."  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co*., 431 F.3d 353, 360 (9th Cir. 2005); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989) ("Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.")  "[J]udgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue."  *Hal Roach Studios, Inc*., 896 F.2d at 1550.  "However, a court may consider facts that are contained in materials of which the court may take judicial notice when considering a motion for judgment on the pleadings."  *Crosby v. Wells Fargo Bank, N.A.*, 42 F. Supp. 3d 1343, 1345 (C.D. Cal. 2014) (citing *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999)).

**B.    Legal Standard on Motion for Summary Judgment**

Federal Rule of Civil Procedure ("Rule") 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The moving party can satisfy its burden in two ways: (1) by presenting evidence that negates an essential

element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, the court must "view[ ] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin,* 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## C.    Requests for Judicial Notice

Defendant filed two identical requests for judicial notice, in support of its motion for judgment on the pleadings and opposition to Plaintiffs' motion for partial summary judgment, of nine documents that relate to the Property's title conveyances and the Quiet Title Lawsuit, (Dkt. No. 30-1, Dkt. No. 45.) Plaintiffs do not oppose these requests.

The nine documents are as follows: (1) joint tenancy grant deed in favor of Mr. Santos and Gloria, as husband and wife, recorded with the San Diego County Recorder's

Office on February 6, 1981 (Dkt. No. 30-2, D's RJN, Ex. 1[3]); (2) appearance, stipulation, waiver, and property settlement agreement filed on December 4, 1992, in *Gloria P. Santos v. Jose P. Santos*, Case No. DN66260, with the San Diego Superior Court, (Dkt. No. 30-3, D's RJN, Ex. 2); (3) interspousal transfer deed in favor of Gloria in her individual capacity, recorded with the San Diego County Recorder's Office on January 20, 1993, (Dkt. No. 30-4, D's RJN, Ex. 3); (4) quitclaim deed in favor of Gloria as Trustee, recorded with the San Diego County Recorder's Office on March 6, 2000, (Dkt. No. 30-5, D's RJN, Ex. 4); (5) quitclaim deed in favor of Gloria and Elizabeth in their individual capacities, recorded with the San Diego County Recorder's Office on June 12, 2014, (Dkt. No. 30-6, D's RJN, Ex. 5); (6) deed of trust listing Elizabeth and Gloria in their individual capacities as borrowers, and HomeBridge Financial Services as lender, recorded with the San Diego County Recorder's Office on June 12, 2014, (Dkt. No. 30-7, D's RJN, Ex. 6); (7) quitclaim deed in favor of Elizabeth in her individual capacity and Gloria as Trustee, recorded with the San Diego County Recorder's Office on June 13, 2014, (Dkt. No. 30-8, D's RJN, Ex. 7); (8) complaint in *Urban Villages San Marcos, LLC v. J. Elizabeth Santos, et al.*, No. 37-2023-00007946-CU-OR-NC, filed on February 24, 2023, with the San Diego Superior Court, (Dkt. No. 30-9, D's RJN, Ex. 8); and (9) first amended complaint in *Urban Villages San Marcos, LLC v. J. Elizabeth Santos, et al.*, No. 37-2023-00007946-CU-OR-NC, filed on December 8, 2023, with the San Diego Superior Court, (Dkt. No. 30-10, D's RJN, Ex. 9).

Under Federal Rule of Evidence 201, the Court may judicially notice facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "Although, as a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion, Fed. R. Civ. P. 12(d), it 'may

---

[3] Because Defendant filed the same request for judicial notice in its opposition to Plaintiffs' motion for partial summary judgment, the Court cites only to its request for judicial notice on the motion for judgment on the pleadings. (Dkt. No. 45.)

take judicial notice of matters of public record' and consider them without converting a Rule 12 motion into one for summary judgment." *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). The Court "must take judicial notice if a party requests it and [the Court] is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

The Court takes judicial notice of Documents 1, 3, 4, 5, 6, and 7. These six documents are property deeds and are all recorded with the San Diego County Recorder's Office. As such, they are "matters of public record" and subject to judicial notice. *See Santana v. BSI Fin. Servs., Inc.*, 495 F. Supp. 3d 926, 936–937 (S.D. Cal. 2020) (taking judicial notice of documents recorded with San Diego County Recorder's Office); *Valasquez v. Mortg. Elec. Registration Sys., Inc.*, No. C 08-3818 PJH, 2008 WL 4938162, at *2-3 (N.D. Cal. Nov. 17, 2008) (taking judicial notice of deed of trust recorded with California county recorder's office).

The Court also takes judicial notice of Documents 2, 8, and 9. These three documents were filed with the San Diego Superior Court as part of Gloria's divorce proceedings and the underlying Quiet Title Lawsuit and are "matters of public record." Additionally, the Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citing *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)). Documents 2, 8, and 9 relate to the present title insurance dispute and are thus subject to judicial notice.

All nine are judicially noticeable because they are either recorded with the San Diego County Recorder's Office or court filings related to the present dispute. Accordingly, the Court GRANTS Defendant's unopposed request for judicial notice.

**D.     Motion for Judgment on the Pleading[4]**

     **1.     First and Second Causes of Action for Declaratory Judgment and Breach of Contract**

Defendant argues the causes of action for declaratory judgment and breach of contract should be dismissed because Gloria is no longer an insured covered under the Policy because it terminated in 2000 when she voluntarily quitclaimed her individual interest in the property to herself as Trustee of the GHS Living Trust, and did not succeed to the interest of the insured by operation of law.  (Dkt. No. 30 at 15-16.)  Second, Defendant contends that Gloria is not covered under the Continuation of Coverage Clause

---

[4] Defendant argues that the Court should disregard inconsistent allegations in the SAC under the sham pleading rule because the SAC omits facts concerning certain transfers of property, and while the first two complaints and the SAC allege the insureds are Gloria Santos and Jose P. Santos, the SAC now also inconsistently alleges that Plaintiffs are the insureds.  (Dkt. No. 30 at 14.)  In response, Plaintiffs argue that they have not provided inconsistent allegations.  (Dkt. No. 39 at 23-24.)

     Under the sham pleading doctrine, "[i]f a party files an amended complaint and attempts to avoid the defects of the original complaint by either omitting facts which made the previous complaint defective or by adding facts inconsistent with those of previous pleadings, the court may take judicial notice of prior pleadings and may disregard any inconsistent allegations." *Colapinto v. Cnty. of Riverside*, 230 Cal. App. 3d 147, 151 (1991).  A trial court may "conclude that the pleading party's cause of action is a sham and sustain a demurrer without leave to amend" if the plaintiff does not provide an explanation.  *Zakk v. Diesel*, 33 Cal. App. 5th 431, 447 (2019) (citation omitted).  There is a split in authority as to whether the sham pleading rule applies in federal court.  *Compare, e.g., Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to 'directly contradic[t] an earlier assertion made in the same proceeding.'") (alteration in original) with *PAE Gov't Servs., Inc. v. MPRI, Inc.* 514 F.3d 856, 860 (9th Cir. 2007) (rejecting "sham pleading" doctrine because nothing in the Federal Rules of Civil Procedure "prevent[s] a party from filing successive pleadings that make inconsistent or even contradictory allegations).

     While the application of the sham pleading doctrine is questionable in federal court, *see Kanaan v. Yaqub*, Case No. 21-cv-09591-BLF, 2022 WL 3357834, at *4 (N.D. Cal. Aug. 15, 2022) ("like many other district courts within the Ninth Circuit, this Court elects to follow the PAE line of cases, which is more consistent with the Ninth Circuit's liberal policy favoring amendment), even if the Court applies the sham pleading rule, it is not appliable in this case.  Here, Plaintiffs omitted facts concerning certain transfers of property in all versions of the complaint; therefore, there is no inconsistency or omission from a prior pleading.  In addition, Plaintiffs filed the SAC to correct how J. Elizabeth Santos held title to the Property but it was implicit in the FAC that both Gloria and Elizabeth were insureds seeking coverage under the Policy.  (*Compare* Dkt. No. 7, FAC *with* Dkt. No. 29, SAC.)  Defendant's argument seeking to apply the sham pleading doctrine is unavailing.

because she did not retain an estate or interest in the land after she conveyed title to herself, as Trustee. (*Id.* at 16-17.) Plaintiffs respond that Defendant improperly and narrowly construes "by operation of law" which according to Plaintiffs does not limit it to only post-death transfers but includes all transfers that do not include a purchase. (Dkt. No. 39 at 16-18.) They also argue that Gloria is an insured because she has continued to "retain an estate or interest in the land" as the settlor and Trustee of the Trust. (*Id.* at 14-15.) Lastly, in the event the Court disagrees with their arguments, Plaintiffs argue, at a minimum, the Policy is ambiguous and they should be given the opportunity to engage in discovery to develop the facts to support their interpretation. (*Id.* at 22- 23.)

Insurance policies are contracts and are governed by the rules of contract interpretation. *Bank of the W. v. Superior Ct.,* 2 Cal. 4th 1254, 1264 (1992). "[I]nterpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), *as modified on denial of reh'g* (Oct. 26, 1995). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties" at the time the contract is formed. *Bank of the W.*, 2 Cal. 4th at 1264 (citing Cal. Civ. Code, § 1636); *Waller*, 11 Cal. 4th at 18. The intent is to be inferred solely from the written provisions of the contract, if possible. *Waller*, 11 Cal 4th at 18 (citing Cal. Civ. Code § 1639).

"If contractual language is clear and explicit, it governs." *Bank of the W.*, 2 Cal. 4th at 1264 (citing Cal. Civ. Code, § 1638[5]). "The clear and explicit meaning of the policy provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or given a special meaning by usage, controls judicial interpretation." *Liberty Nat'l Enters., L.P. v. Chicago Title Ins. Co*., 217 Cal. App. 4th 62, 77 (2013); *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807 (1982) ("Words used in an insurance policy are to be interpreted according to the plain meaning which a layman

---

[5] "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638.

would ordinarily attach to them.").

On the other hand, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Bank of the W.,* 2 Cal. 4th at 1264-65 (citing Cal. Civ. Code § 1649). "This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, 'the objectively reasonable expectations of the insured.'" *Id.* at 1265 (citation omitted). "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Waller*, 11 Cal. 4th at 18. Determining whether a policy provision is ambiguous depends on the facts and circumstances of the case at hand. *Bank of the W.*, 2 Cal. 4th at 1265. When a provision in an insurance policy is ambiguous, courts consider extrinsic evidence to determine the proper interpretation. *Palacin v. Allstate Ins. Co.*, 119 Cal. App. 4th 855, 862 (2004). At the pleading stage, "an insurer [moving to dismiss] based on insurance policy language must establish conclusively that this language unambiguously negates beyond reasonable controversy the construction alleged in the body of the complaint." *Id.* On a motion to dismiss, the court must conditionally consider extrinsic evidence "alleged in the complaint, to determine if it would be relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *George v. Automobile Club of S. Cal.*, 201 Cal. App. 4th 1112, 1122 (2011).

If policy provisions are ambiguous, the "language is resolved by interpreting the ambiguous language in accordance with the objectively reasonable expectations of the insured." *Farmers Ins. Exch. v. Knopp*, 50 Cal. App. 4th 1415, 1422 (1996) (citing *Bank of the W.,* 2 Cal. 4th at 1264-65). "Only if this rule does not resolve the ambiguity do we then resolve it against the insurer." *Farmers Ins. Exch.,* 50 Cal. App. 4th at 1422 (quoting *Bank of the W.,* 2 Cal. 4th at 1265). Even seemingly clear language when read in context of the policy and related circumstances may be found ambiguous. *Employers Reinsurance Co. v. Superior Ct.*, 161 Cal. App. 4th 906, 919 (2008). Interpretation of a

contract, including resolving any ambiguity is a legal question, unless it concerns the credibility of extrinsic evidence. *Legacy Vulcan Corp. v. Superior Ct.*, 185 Cal. App. 4th 677, 688 (2010).

Under California law, an insurer must defend its insured "if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp. of Cal. v. Superior Ct.*, 6 Cal. 4th 287, 299 (1993) (emphasis in original) (citation omitted). This duty to defend, which applies even to claims that are "groundless, false, or fraudulent," is separate from and broader than the insurer's duty to indemnify. *Waller,* 11 Cal. 4 at 19 (citation omitted). However, "where there is no possibility of coverage, there is no duty to defend . . . ." *Id.* (internal quotation marks and citation omitted).

### a.    Whether Gloria is an Insured by Operation of Law[6]

The Policy defines "insured" as "the insured named in Schedule A [Jose P. Santos and Gloria P. Santos], and, subject to any rights or defenses the Company may have had against the named insured, *those who succeed to the interest of such insured by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin, or corporate or fiduciary successors*." (Dkt. No. 29, SAC ¶ 23 (emphasis added); Dkt. No. 29-1, Ex. A, Policy at 4.)

The FAC alleges that Gloria has maintained an interest in the Property even when she transferred her individual interest to a trust and made other intra-family transfers for purposes of estate planning. (Dkt. No. 7, FAC ¶¶ 5, 27, 31.) According to the FAC, passing property to a living trust owned by an insured is a widely used practice of estate planning strategy that facilitates the transfer of property upon the trustor's death by avoiding the complex and time-consuming process of probate. (*Id.* ¶ 32.) Because the

---

[6] Neither party has meaningfully analyzed whether Elizabeth is an insured under the Policy.

definition of insured distinguishes between those who succeed to the interest of the insured by operation of law from those who succeed to the interest of the insured by purchase, Gloria asserts she remains an insured under the Policy.  (*Id.* ¶¶ 44, 46.)

The FAC further claims that Defendant's interpretation that coverage ended in 2000 upon conveyance of the title of the Property to GHS Living Trust by Trust Deed is not consistent with the "language of the Policy, the intent of the Policy, the drafting history of policy language, admissions by industry representatives, and the reasonable expectations of the insureds."  (Dkt. No. 1, FAC ¶ 43.)  Plaintiffs assert that they, as well as Defendant's predecessor in interest, did not intend for the coverage to terminate based on these transfers.  (*Id.* ¶¶ 96, 97.)

Defendant argues that the Policy at issue is governed by the ruling in *Kwok v. Transnation Title Ins. Co.,* 170 Cal. App. 4th 1562 (2009), where the court of appeal held that a transfer of title to a family trust is a voluntary act and does not arise by operation of law, and accordingly, does not extend coverage to the trustee.  (Dkt. No. 30 at 17-19.)  Plaintiffs assert that Defendant's reliance on *Kwok* is misplaced because it, unlike in this case, concerned a distinct legal entity where two members of an LLC transferred their property into a trust, as trustees.   (Dkt. No. 39 at 19-20.)  According to Plaintiffs, "by operation of law" includes more than post-death transfers relying on "by operation of law" as viewed by a layperson and defined by the Merriam-Webster dictionary.[7]  (Dkt. No. 39 at 16.)  Further, Plaintiffs maintain the definition of insured distinguishes between those who acquire their interest by purchase and those acquire their interest without a purchase; thus, a reasonable reader would understand "operation of law" to include estate planning and intra-family transfers.  (*Id.* at 16-17.)  They additionally argue that, at a minimum, the policy is ambiguous because "by operation of law" is susceptible to more than one meaning and should be construed in favor of coverage consistent with the

_____

[7] According to Plaintiffs, the Merriam-Webster dictionary defines "operation of law" as the "application of law to the situation that gives rise to a result."  (Dkt. No. 39 at 16.)

reasonable expectation of the insured.  (*Id.* at 18.)

The Court does not place as much precedential value on *Kwok*'s ruling as Defendant.  In *Kwok*, a husband and wife formed a limited liability company, ("LCC"), and were its only members.  *Kwok*, 170 Cal. App. 4th at 1565.  The LLC purchased real property and obtained a CTLA standard form title insurance policy naming the LLC as insured.  *Id.*  Mr. Kwok, one of the LLC members, later signed a grant deed transferring the property to him and his wife as trustees of their revocable family trust, and dissolved the LLC about two months later.  *Id.*  When the Kwoks sought coverage from the title insurance company in an easement dispute with their neighbors, the insurer denied their claim on the ground that the transfer of property by the LLC to the Kwoks, as trustees, was a voluntary act that did not arise by operation of law and terminated coverage under the policy.  *Id.* at 1566.  The trial court rejected the Kwoks' claim that they became insureds by operation of law when they succeeded to the LLC's interest, and the appellate court affirmed.  *Id.* at 1567, 1573.  Even though the court of appeal concluded "[t]he transfer of property by an insured into a family trust is a voluntary act and not one that arises by operation of law[]", it highlighted the legal significance of a limited liability company where a member of the LLC does not hold an ownership interest in the limited liability company property.  *Id.* at 1570-71.  Because the LLC, as the named insured, had transferred the property's title to the nonmember trustees, coverage under the title insurance policy terminated as a matter of law.  *Id.*  Unlike *Kwok*, in this case, Gloria, an individual, transferred the Property to herself as Trustee of the GHS Living Trust.

Here, taking the allegations in the FAC as true and construed in the light most favorable to Plaintiffs, Plaintiffs' interpretation of "by operation of law" is supported by cases that decline to follow *Kwok*, the insurance industry practice and the Plaintiffs' reasonable expectations at the time the title policy was purchased.  As a result, the Court cannot conclude as a matter of law that Gloria is not an insured as defined under the Policy.  *See Palacin,* 119 Cal. App. 4th at 862 (on motion to dismiss, insurer must "establish conclusively that this language unambiguously negates beyond reasonable

controversy the construction alleged in the body of the complaint.").

First of all, state courts have interpreted "by operation of law" as it applies to the definition of an insured in CTLA and ATLA title insurance policies in two different and reasonable ways. On the one hand, as argued by Defendant, some courts hold that "by operation of law" strictly involves an involuntary transfer and does not include a voluntary act by a grantor. *See Kwok*, 170 Cal. App. 4th at 1571 ("transfer of property by an insured into a family trust is a voluntary act and not one that arises by operation of law"); *Green v. Chicago Title Ins. Co.*, CV 20-37-BLG-SPW, 2021 WL 4476446, at *4 (D. Mont. Sept. 30, 2021) (transfer of property by husband and wife as joint tenants to the irrevocable trust by quitclaim deed was not by operation of law because all property rights were transferred to the trusts, as separate and distinct entities); *Durbano & Garn Inv. Co., LC v. First Am. Title Ins. Co*., 330 P.3d 119, 122 (Utah App. 2014) ("all of the neighboring words listed in the policy—heirs, devisees, survivors, personal representatives, next of kin, and fiduciary successors—are descriptive of one who 'succeed[s] to the interest of the named insured' regardless of the successor's intent."); *Shotmeyer v. New Jersey Realty Title Ins. Co*., 948 A.2d 600, 608 (N.J. App. 2008) (transfer occurs by "operation of law" when it is "automatic or involuntary").

On the other hand, as argued by Plaintiffs, some courts, to account for the reasonable expectations of the purchaser, define "by operation of law" broadly to include a voluntary transfer of property that does not involve an exchange of money. *See N. Fork Land & Cattle, LLLP v. First Am. Title Ins. Co., 362 P.3d 341, 348 (Wyo. 2015); Historic Smithville Dev. Co. v. Chelsea Title & Guar. Co., 445 A.2d 1174, 1177-78 (N.J. Ch. Div. 1981), aff'd, 464 A.2d 1177 (App. Div. 1983)* (court held voluntary transfer of assets from a dissolved corporation, pursuant to a plan of liquidation, occurred by "operation of law" under the title insurance language). *N. Fork Land & Cattle* observed that cases such as *Kwok* "focus on the technical definition of 'operation of law' with little or no inquiry into the intent of the parties or how a reasonable insured would understand the policy language." *N. Fork Land & Cattle, 362 P.3d 341 at 348.* As a result, cases like *Kwok* fail

to "look to the plain meaning of the language as a reasonable insured would." *Id.*

In addition, Plaintiffs' broader interpretation is supported by the reasoning behind the 2006 amendment to the ALTA standard policy alleged in the FAC. (Dkt. No. 7, FAC ¶¶ 48-52.) The FAC alleges that in 2006, ALTA[8] amended its standard policy form that made explicit what was already implicit before which was that coverage continues when an insured transfers property to a trust for estate planning purposes. (*Id.* ¶ 47.) The amended 2006 ATLA Policy defines insured as "a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title[:] . . .(4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes." *N. Fork Land & Cattle*, 362 P.3d at 350 (citing amended ATLA policy in 2006).

Plaintiffs assert that the 2006 amendment was to clarify the title insurance industry's long standing recognition that transfer of title to a trust for estate planning purposes does not present any greater risk to the insurer than the Policy's explicit coverage of the insured's heirs, devisees or personal representatives. (Dkt. No. 7, Compl. ¶¶ 50-52) (citing J. Palomar, The 2006 ALTA Title Ins. Policies: What new Protection Do They Give? 42 Real Prop. Prob. & Tr. J. 1, 24-26 (2007); M. Bidar, Problem Solves? Title Insurance Coverage for Real Property Transfers, 17 Ohio Prob. L.J. 118 (2007) (noting 2006 change as "a long overdue clarification"); 1 Title Insurance Law § 4.23 (2008); J. Riven & T. Stikker, Title Insurance of Estate Planning Transfers, 12 Prob. & Prof. 15 (1998).) As such, according to the FAC, Gloria's transfer of title from herself, as an individual, to herself as Trustee of the GHS Living Trust is "by operation of law" and she remains an insured under the Policy.

The two approaches by courts defining "by operation of law" as it relates to an "insured" as well as the clarification to the ALTA Policy in 2006 to explicitly include

---

[8] The FAC alleges, on information and belief, that the definition of "insured" in the CTLA Policy in this case is based on the model insurance policies from the ALTA forms. (Dkt. No. 7, FAC ¶ 47.)

transfer of property from an insured to a trustee for estate planning purposes support both parties' reasonable interpretation of "by operation of law" making it ambiguous.  *See Waller*, 11 Cal. 4th at 18 ("policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable").  As such, the FAC has sufficiently alleged the provision "by operation of law" as used in the Policy is ambiguous; as such, its interpretation will require extrinsic evidence to resolve the ambiguity by interpreting the language in accordance with the objectively reasonable expectations of the insured.  *See Berman v. Amex Assurance Co*., Case No. SACV 08–01051 DOC (RNBx), 2009 WL 10674124, at *4 (C.D. Cal. June 19, 2009) ("courts frequently look to extrinsic evidence in order to conclusively interpret the insurance policy and determine the objectively reasonable expectations of the insured") (citing *Cooper Co. v. Transcontinental Ins. Co*., 31 Cal. App. 4th 1094, 1107 n.9 (1995) (recognizing the admissibility of extrinsic evidence to establish meaning of ambiguous policy terms)).  Because "the construction of ambiguous contract provisions is a factual determination", the Court DENIES Defendant's motion for judgment on the pleadings on the first and second causes of action based on whether Gloria remains an insured "by operation of law" under the Policy.  *See Reynolds v. Allstate Life Ins. Co.,* No. CV-F-05-0874 REC/SMS, 2006 WL 662749, at *2 (E.D. Cal. Mar. 16, 2006) (citing *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.,* 991 F.2d 94, 97 (4th Cir. 1992)); *Berman v. Amex Assurance Co*., Case No. SACV 08–01051 DOC (RNBx), 2009 WL 10674124, at *4 (C.D. Cal. June 19, 2009) (noting, in its prior order, that because both parties raised a genuine dispute as to the meaning of insured in the policy, the court denied the motion to dismiss and invited the parties to submit extrinsic evidence to prove up their competing interpretations of the Policy).

### b.    Whether Gloria is an Insured under the Continuation of Coverage Provision

The Continuation of Coverage states that coverage "shall continue in force as of Date of Policy, in favor of an insured so long as such insured *retains an estate or interest*

*in the land*, or owns an indebtedness secured by a purchase money mortgage given by a purchaser from such insured, or so long as such insured shall have liability by reason of covenants of warranty made by such insured in any transfer or conveyance of such estate or interest; provided, however, this policy shall not continue in force in favor of any purchase from such insured of either said estate or interest or indebtedness secured by a purchase money mortgage given to such insured." (Dkt. No. 29, SAC ¶ 24 (emphasis added); Dkt. No. 29-1, Ex. A, Policy at 4.)

Defendant maintains that Gloria is not an insured because she did not retain an estate or interest in the land when she quitclaimed her interest in the Property to herself as Trustee of her Trust in 2000; therefore, coverage terminated under the Policy. (Dkt. No. 30 at 16-17.) Further, because Gloria quitclaimed her interest in the Property, she does not have "liability by reason of covenants of warranty made by such insured in any transfer or conveyance of such estate or interest." (*Id*.) Relying on principles of trust law, Plaintiffs contend that the Property transferred into the revocable trust is deemed the property of Gloria, as Trustor until her passing, and Gloria, as trustee, holds legal title to the Property, as trust property. (Dkt. No. 39 at 14-15.) As such, she argues she is an insured named in Schedule A because she has held legal title to the Property ever since she purchased the Policy in 1981. She further asserts that because a revocable inter vivos trust is a probate avoidance device, Gloria remains the legal owner of the Property when she, as trustor, conveyed to herself, as trustee of a revocable trust. (*Id.* at 15.)

"A quitclaim deed transfers whatever present right or interest the grantor has in the property." *Westlake v. Silva*, 49 Cal. App. 2d 476, 478 (1942). "A quitclaim deed operates as a release of a grantor's interest in the property." *Est. of Dayan*, 5 Cal. App. 5th 29, 37 (2016). "The choice of the quitclaim deed form, with its established legal import, substantially reflects an intention to convey title in its entirety." *City of Manhattan Beach v. Superior Ct.*, 13 Cal. 4th 232, 239 (1996). Further, "quitclaim deeds contain no implied warranty of title," *In re Marriage of Gioia*, 119 Cal. App. 4th 272, 280 (2004), and "such deeds do not carry covenants of warranty." *Platner v. Vincent*,

194 Cal. 436, 444 (1924).

Here, the Continuation of Coverage provision provides continuing coverage under the Policy after a transfer of the Property, either by way of retaining an estate or interest in the land, sale or by deed.  (*See* Dkt. No. 29-1, Ex. A, Policy at 4.)  The provision "retains an estate or interest in the land" must be read "in conjunction with other portions thereof."  *See Hartford Accident & Indem. Co. v. Sequoia Ins. Co*., 211 Cal. App. 3d 1285, 1298 (1989).  By reading "retains an estate or interest in the land" in relation to the other provision where coverage continues if the insured retains liability due to a covenant of warranty that she makes as part of any title transfer or conveyance, to fall under the Continuation of Coverage provision, a transfer should be made by warranty deed and not a quitclaim deed.  Because a quitclaim deed releases all of the grantor's interest in the property and provides no warranties, it cannot logically fall under the Continuation of Coverage provision.

In this case, Gloria, as a named insured, in her individual capacity, quitclaimed[9] her interest in the Property to herself, as Trustee, in 2000, which does not contain any express warranties.  Because she released all her interest in the Property, Gloria, as an individual, did not retain an interest in the Property in her individual capacity.  California case law supports this reading because quitclaim deeds serve as a release of the grantor's interest in the property and reflect a grantor's intent to convey title in its entirety.  *See City of Manhattan Beach*, 13 Cal. 4th at 239.

Further, unlike the ambiguity in the phrase "by operation of law" exhibited by courts defining it in two different but reasonable manner and the insurance industry practice and reasoning behind the 2006 amendment to the ALTA standard policy, as well as the reasonable expectations of Plaintiffs at the time the policy was purchased, Plaintiffs have not shown that "retain[ing] an estate or interest in the land" has been

---

[9] The deed expressly states that Gloria in her individual capacity as grantor quitclaims "any and all interest in" the Property.  (Dkt. No. 30-5, D's RJN, Ex. 4 at 1-3.)

deemed ambiguous or expressed their reasonable expectations at the time the policy was signed.  Instead, Plaintiffs solely rely on black letter trust law, not relevant title insurance law, to support their argument that Gloria continues to hold an interest in the Property.  As it relates to title insurance, courts have held that when an insured, under a title policy, transfers title by quitclaim deed, the insured no longer "retains an estate or interest in the land."  *See Green v. Chicago Title Ins. Co.*, CV 20-37-BLG-SPW, 2021 WL 4476446, at *4 (D. Mont. Sept. 30, 2021) ("Any and all property rights were transferred to the Trusts as separate and distinct entities with the Greens reserving no interests or estates in the land. While William Green was named trustee of the trust, the Greens themselves, the named insureds, retained no interest and the coverage lapsed as a result."); *Pak v. First Am. Title Ins. Co.*, 2020 WL 6886551, at * 4 (Ct. App. Nov. 24, 2020) (unpublished) (member of LLC did not retain interest in the property after it was quitclaimed to them as individuals).  Accordingly, the Court GRANTS Defendant's motion for judgment on the pleadings that Glora is not an insured as it concerns the Continuation of Coverage provision.

### 2.    Third Cause of Action – Bad Faith

Defendant moves to dismiss the third cause of action for bad faith because it did not breach the Policy because coverage terminated.  (Dkt. No. 30 at 26.)  Plaintiffs do not address this argument.  Because the Court DENIES dismissal of the first cause of action on whether Gloria is an insured, a threshold question, the Court also DENIES Defendant's motion for judgment on the pleadings on the third cause of action.[10]

---

[10] Defendant did not move to dismiss the fourth cause of action for contract reformation; rather it replied to Plaintiffs' argument that Defendant failed to move to dismiss the fourth claims.  The Court declines to consider an issue not raised in the moving papers.  *See Manago v. Williams*, No. CIV S–07–2290 LKK KJM P, 2010 WL 681672, at*2 (E.D. Cal. Feb. 24, 2010) ("Insofar as plaintiff's objections to the findings and recommendations complain of inadequate medical care, these arguments were not raised in the initial motion, and the court declines to address them here."); *United States v. Rodriguez*, CR. NO. 2:11–0296 WBS, 2016 WL 8730864, at *2 (E.D. Cal. Oct. 14, 2016) ("Because this argument was not supported by any authority and was not  raised in the defendants' written motion, the court declines to further address it in this Order.").

**E.    Plaintiffs' Motion for Partial Summary Judgment**

    **1.    Merits**

        Plaintiffs move for partial summary judgment arguing there are undisputed issues of fact that Gloria remains insured under the Policy, the coverage afforded by the Policy has not terminated and Defendant has a duty to defend Gloria in the Underlying Quiet Title Lawsuit.[11]  (Dkt. No. 38-1.)  Defendant argues that Plaintiffs have not met their burden of proof on summary judgment, the motion is premature because discovery just commenced and should be denied[12] and the Court should grant summary judgment in favor of it, a nonmovant, under Rule 56(f) because the undisputed facts show it is entitled to judgment as a matter of law.  (Dkt. No. 44.)

        The parties essentially raise the same arguments in briefing on Defendant's motion for judgment on the pleadings as it relates to whether Gloria is an insured.  In her motion for partial summary judgment, Plaintiff does not provide any extrinsic evidence to support her interpretation of the terms of the Policy and relies solely on the Policy and deeds of trusts showing how the Property was transferred.  Because the Court concludes that the phrase "by operation of law" is ambiguous, and extrinsic evidence will be necessary to resolve the interpretation of that phrase, the Court DENIES Plaintiffs' motion for summary judgment that she is an insured under the Policy and also that Defendant had a duty to defend.  The Court also DENIES Plaintiffs' motion for partial summary judgment on the issue of whether she is an insured under the Continuation of Coverage provision based on the reasoning above.

/ / /

---

[11] Plaintiffs do not move for summary judgment seeking to dismiss any cause of action but to seek judgment on part of a claim.  *See* Fed. R. Civ. P. 56(a).

[12] Inconsistently, even though Plaintiffs seek summary judgment on certain facts, in opposition to the motion for judgment on the pleadings, they argue that the Court should deny the motion in order allow discovery to proceed to discover facts as to the interpretation of certain provisions of the Policy.  Similarly, Defendant also moves for judgment on the pleadings, but in opposition to Plaintiffs' motion for partial summary judgment, it asserts that the motion is premature because discovery has not taken place.

## 2.    Statute of Limitations

In opposition, Defendant argues, for the first time, that Plaintiffs' claims are barred by the two-year statute of limitations.  (Dkt. No. 44 at 28-29.)  While the Court would generally decline to address an issue not raised by Defendant on a motion, in the interest of judicial efficiency, the Court considers the issue in this case.

Defendant argues that even if the Policy did not terminate in March 2000, the claims are barred by the two-year statute of limitations because Plaintiffs admit they knew in April 2019 and February 2020, that Urban Villages, the plaintiff the Quiet Title Lawsuit, was blocking the easement with boulders, that is subject to the Quiet Title Lawsuit and is when they discovered their loss or became aware there was a challenge to their title.   (Dkt. No. 44 at 28-29.)  Plaintiffs reply that the statute of limitations for a failure to defend cause of action accrues when an insurer denies the insured's tender of defense or may be equitably tolled until the underlying lawsuit is terminated.  (Dkt. No. 46 at 9-11.)

The statute of limitations for a cause of action on a policy of title insurance is two years and "shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder."  Cal. Civ. Proc. Code § 339.  A cause of action for an insurer's "failure to defend accrues when the insurer refuses the insured's tender of defense, but is tolled until the underlying action is terminated by final judgment." *Lambert v. Commonwealth Land Title Ins. Co*., 53 Cal. 3d 1072, 1077 (1991) (resolving conflict on whether a cause of action under a title insurance policy alleging a failure to defend accrues when the insurer refuses to defend or when the underlying action is terminated by final judgment).

Here, the Quiet Title Lawsuit was filed on February 24, 2023.  (Dkt. No. 30-9, D's RJN, Ex. 8 at 17.)  Plaintiffs notified Defendant, in writing, about the Quiet Title Lawsuit, and on February 2, 2024, Defendant refused to defend.  (Dkt. No. 29-1, Ex. C at 33-36.)  The claims accrued on February 2, 2024 and because the complaint in this case was filed nine months later on November 4, 2024, it is timely.  (Dkt. No. 1.)  Therefore,

Plaintiffs' claims are not time-barred.

## CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part Defendant's motion for judgment on the pleadings and DENIES Plaintiffs' motion for partial summary judgment.

IT IS SO ORDERED.

Dated: December 16, 2025

Hon. Gonzalo P. Curiel
United States District Judge